IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID COTTON, | : |
| Plaintiff, | : |
| v. | : Civ. No. 14-596-RGA |
| EWONNA CAMPBELL, et al., | : |
| Defendants. | : |

**MEMORANDUM ORDER**

At Wilmington, this __9__ day of May, 2016, having considered Plaintiff's motions (D.I. 52, 53, 64, 67, 70),

IT IS HEREBY ORDERED, as follows:

**I. Introduction**

Plaintiff David Cotton was incarcerated at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, when he commenced this action on May 12, 2014, pursuant to 42 U.S.C. § 1983. He is currently housed at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware. He has sued seven correctional officers on claims related to the use of excessive force on February 22, 2014. (D.I. 14). Before the Court are several motions filed by Plaintiff. (D.I. 52, 53, 64, 67, 70).

**II. Injunctive Relief**

On January 4, 2016, Plaintiff filed a letter/motion construed as a motion for injunctive relief and complains that he is being retaliated against for filing this lawsuit. (D.I. 52). He seeks transfer to another institution. Defendants oppose the motion.

A preliminary injunction is "an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *Id.* Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

Plaintiff states he is subject to retaliation consisting of tampering with his legal mail, freezing his prison trust account, decreasing his food, denying recreation, and impeding his ability to submit grievances because he commenced this lawsuit. He seeks a transfer to another jail because he fears for his life.

Defendants advise that: (1) problems with Plaintiff's mail occurred because he failed to inform the Court of his transfer from the HRYCI to the VCC; (2) because Plaintiff has outstanding obligations to the HRYCI, when funds become available in his trust account at the VCC, the funds are transferred to the HRYCI to satisfy the existing debt; (3) they found no grievances or complaints to substantiate Plaintiff's complaints regarding a decrease in food; and (4) Plaintiff has filed numerous grievances.

Upon review of the allegations made by Plaintiff, the Court concludes that he has not demonstrated the likelihood of success on the merits. Notably, with regard to a

transfer to a different jail, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. Apr. 26, 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. *Olim v. Wakinekona,* 461 U.S. 238, 251 (1983). Finally, granting injunctive relief is in contravention of the public's interest in the effective and orderly operation of its prison system. *Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1385 (D. Del. 1997). Therefore, the court **DENIES** the motion.

### III. Motion to Compel/Discovery

On January 7, 2016, Plaintiff filed a motion to compel, and on April 4, 2016, he filed a second motion for initial discovery. (D.I. 53, 70).

> Pursuant to Fed. R. Civ. P. 26:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

On September 24, 2015, Plaintiff served Defendants with a request for production of documents (D.I. 46), and Defendants responded to the request on

3

December 23, 2015 (D.I. 50). Plaintiff moves to compel responses to Request Nos. 1, 2, 5, 6, 7, 8, 9, and 10.

**Request No. 1** seeks February 22, 2014 security camera recordings and Quick Response Team ("QRT") video recordings from a hand held camcorder, made during the incident that forms the basis of this lawsuit.[1] Defendants responded that there are no security camera or QRT camcorder recordings of the incident. Plaintiff seeks to compel production of the recordings on the grounds that Defendants are lying when they state that recordings do not exist. He points to the disciplinary report issued on as a result of the February 22, 2014 incident that states, "video and pictures are secured in Capt. quarters." (D.I. 53, ex.).

Defendants acknowledge there were video recordings and explain that after the tapes were reviewed, and it was determined there was no relevant information, the tape was used again and taped over. Defendants state that the video only captured the shakedown of Plaintiff's cell (where no contraband was found) and this occurred prior to the February 22, 2014 altercation. Defendants further state that there is no video recording of the altercation that occurred inside the interview room. Finally, Defendants advise that the QRT did not videotape its escort of Plaintiff as the escort was routine in nature. Defendants cannot produce what does not exist. Therefore, the motion to compel Request No. 1 is **DENIED**.

**Request No. 2** seeks all typed, handwritten, original or copies of incident reports made by DOC staff and any witnesses. Defendants raised several objections in

---

[1] Plaintiff was provided with photographs taken at the time of the incident.

4

response to Request No. 2. Plaintiff moves to compel on the grounds that he was denied all typed, handwritten, original, or copies of incident reports made by DOC staff and witnesses. In response to the motion, Defendants acknowledge that, as of March 31, 2016, all reports requested have been produced to Plaintiff. (*See* D.I. 68). Therefore, the Court **DENIES** as moot the motion to compel Request No. 2.

**Request No. 5** seeks copies of logbook, attendance of Delaware Department of Correction ("DOC") staff on duty, names, etc. on day of the incident. Defendants object on the grounds that the request is irrelevant, immaterial, overly broad, unduly burdensome, and onerous, seeks information that is confidential and privileged pursuant to 11 Del. C. § 4322,[2] and seeks information that cannot be produced due to security concerns vis-à-vis staffing of the facility. Plaintiff asks the Court to "bypass" the objection that the request is burdensome because Defendants have not demonstrated why the request is burdensome.

Defendants' objections are **SUSTAINED** based upon 11 Del. C. § 4322 and security concerns of the HRYCI. In addition, Defendants advise that they have

---

[2]The relevant parts of the statute provide as follows:
(c) No inmate shall be provided a copy of the Department of Correction Policy and Procedures Manuals, The Bureau of Prisons Policy and Procedures Manuals, nor any of the Department of Correction Facilities Operational Procedures, Administrative Regulations and Post Orders.
(d) The Department of Correction Policies and Procedures, including any Policy, Procedure, Post Order, Facility Operational Procedure or Administrative Regulation adopted by a Bureau, facility or department of the Department of Correction shall be confidential, and not subject to disclosure except upon the written authority of the Commissioner. 11 Del. C. § 4322 (c) & (d).

identified for Plaintiff all staff on duty on the time, date, and tier, and provided incident reports detailing the level and nature of staff involvement in this case.

**Request No. 6** seeks all medical reports and all reports about the incident written or typed by medical personnel. Defendants respond that they are not in possession of Plaintiff's medical records and that the records, should they exist, are maintained separate and apart from the rest of Plaintiff's institutional file and are maintained and in the sole possession/custody of the Delaware Department of Correction's contract medical vendor and its records custodian. Defendants indicate that they have attempted to obtain the records informally and have been advised that no such documents exist.

The Court takes judicial notice that the DOC enters into healthcare contracts with healthcare service providers to provide medical care to inmates, such as Plaintiff, who are incarcerated within the DOC. While Plaintiff's medical records may not be in Defendants' possession, by reason of its contractual relationships between the DOC and its medical service providers, the Court determines that Plaintiff's medical records are under the DOC's legal control.[3] See In re Grand Jury, 705 F.3d 133, 147 (3d Cir. 2012) (the test for the production of documents is control, not location); see also Searock v. Stripling, 736 F.2d 650 (11th Cir. 1984) (defining "control" as the legal right to obtain documents upon demand). Given that Plaintiff's medical records are under

---

[3] I don't think Defendants say otherwise. Defendants say, "such records are not as readily obtainable as Plaintiff . . . contends." (D.I. 72 at 7). That implies to me that Defendants can produce the records.

Defendants' control, the Court **GRANTS** the motion to compel Request No. 6 to the extent that Plaintiff's medical records relative to the February 22, 2014 incident exist.

**Request No. 7** requests copies of all rules, regulations, and policies regarding the duties perform by the QRT during codes called when the QRT responds to a call for action. Defendants object on the grounds that the request is irrelevant, immaterial, overly broad, unduly burdensome, and onerous, seeks information that is confidential and privileged pursuant to 11 Del. C. § 4322, and seeks information that cannot be produced due to security concerns vis-à-vis staffing of the facility.

Defendants' objections are **SUSTAINED** based upon 11 Del. C. § 4322 and security concerns of the HRYCI. The motion to compel Request No. 7 is **DENIED**. In addition, Defendants note that there is no videographic recording of actions taken by the QRT because the situation had resolved by the time the QRT arrived.

**Request No. 8** seeks records of all Defendants (such as all grievances filed against them), copies of job performance, job performance records, etc. Defendants object on the grounds that Request No. 8 is irrelevant, immaterial, vague, overly broad, unduly burdensome, onerous, and wholly unrelated to the instant case or the claims set forth and remaining therein, that the information sought is confidential and privileged pursuant to 11 Del. C. § 4322, and on the grounds of privacy. While objecting, Defendants produced grievances filed by Plaintiff that appear to be related to the alleged incident that forms the basis of this lawsuit.

The Court finds Defendants' response to Request No. 8 adequate and **SUSTAINS** the objections to Request No. 8 as it is overly broad and unduly

burdensome.[4] However, if any named Defendant has been disciplined within the last five years for the use of excessive force, I think that is something that should be produced, and the Defendants are **ORDERED** to do so.

**Request No. 9** seeks all rules and regulations and policies of HRYCI concerning the treatment of prisoners. Defendants object on the grounds that the documents contain confidential and privileged information pursuant to 11 Del. C. § 4322. Despite the objections, Defendants produced a copy of the inmate housing rules at the HRYCI, the inmate handbook provided to HRYCI inmates, which contains appropriate policy statements regarding treatment of inmates housed at HRYCI, and the HRYCI SOP policies.

The Court finds Defendants' response to Request No. 9 adequate and **SUSTAINS** the objections to Request No. 9.

**Request No. 10** seeks copies of witness statements. Defendants initially objected to this request. They have since advised, however, that they have produced the requested incident reports and witness statements. In addition, Defendants addressed Plaintiff's concerns regarding potential witness inmate Sumpter by providing the affidavit of Lt. Kenneth McMillan who refutes Plaintiff's belief that Sumpter witnessed the events that form the basis of this complaint.

Therefore, the Court **DENIES** Plaintiff's motion to compel Request No. 10.

Finally, Plaintiff filed a motion for initial discovery. (D.I. 70). The motion reads as a motion to compel and seeks the same relief as in the motion to compel found at

---

[4] Plaintiff alleges unprovoked and repeated punching, kicking, and macing while he was shackled. (D.I. 14 at 1-2). Other

Docket Item 53 that is addressed in detail hereinabove. Therefore, the Court **DISMISSES** as moot the motion for initial discovery.

## IV. Depositions

Plaintiff moves to depose Defendants Ewonna Campbell ("Campbell"), Allen Harris ("Harris"), King Ayala ("Ayala"), Gregory Esposito ("Esposito"), Stephen Brackett ("Brackett"), and Joseph Loy ("Loy") regarding the February 22, 2014 incident. (D.I. 64). In addition, Plaintiff would like: (1) defense counsel provide two tape recorders so that there will be two copies of the taped depositions; (2) the depositions held before an "officer" such as a notary public; (3) the depositions taken one-by-one and not as a group; (4) the taped depositions filed with the court; (5) the depositions conducted in a quiet room; (5) the presence of only Plaintiff, the deponent, and the court officer during the deposition; (6) an order for Plaintiff to listen to the depositions on a tape player provided by prison staff; and (7) a copy of the taped depositions.

Plaintiff is responsible for his own costs in prosecuting his case, including the costs of discovery and assembling the facts. The law is well-settled that *pro se* litigants must pay for the expenses involved in their civil actions, even when proceeding *in forma pauperis*. See *Victor v. Lawler*, 2010 WL 2326248, *3-4 (M.D. Pa. June 2, 2010). "There is no provision for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993); *see also Ballard v. Williams*, 2013 WL 5291109, *4 (M.D. Pa. 2013) (finding that indigent plaintiff is

9

responsible for payment of own discovery expenses); see also *Hodge v. United States*, 2009 WL 2843332, *4-*5 (M.D. Pa. 2009) (*in forma pauperis* plaintiffs, including *pro se* inmates, are responsible for their litigation fees in civil actions); *Tabron v. Grace*, 6 F.3d at 159 (3d Cir. 1993) (court had no authority to pay for plaintiff's deposition transcript). For these reasons, the instant motion is **GRANTED**, but only to the extent that Plaintiff is free to conduct depositions of the above-listed Defendants to the extent he has the financial ability to do so. Any arrangement with respect to the scheduling of depositions and/or payment of the stenographer is Plaintiff's responsibility.

**V.     Motion in Limine**

Plaintiff moves the Court to preclude Defendants' use of his disciplinary history in evidence as a motive to justify Defendants' actions. (D.I. 67). The motion is **DISMISSED** as premature without prejudice to renew.

**VI.    Conclusion**

1. Plaintiff's letter/motion for injunctive relief (D.I. 52) is **DENIED**.

2. Plaintiff's motion to compel (D.I. 53) is **GRANTED** in part and **DENIED** in part. Defendants shall produce Plaintiff's medical records and any excessive force disciplinary records for any of the named Defendants before **June 3, 2016.**

3. Plaintiff's motion to take oral depositions (D.I. 64) is **GRANTED** only to the extent that Plaintiff is free to conduct Defendants' depositions to the extent he has the financial ability to do so.

4. Plaintiff's motion in limine (D.I. 67) is **DISMISSED** as premature without prejudice to renew.

5. Plaintiff's motion for initial discovery (D.I. 70) is **DISMISSED** as moot.

*Richard G. Andrews*
UNITED STATES DISTRICT JUDGE